U.S. DISTRICT COURT
OF TEXAS
FILED

JUL 18 2014

CLERK, U.S. DISTRICT COURT
By_____
Deputy

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

JOHN LAY,                              §
    PLAINTIFF,                      §
                                    §
VS.                                    §          CIVIL ACTION NO. 4:13-CV-579-BJ
                                    §
CAROLYN W. COLVIN, ACTING              §
COMMISIONER OF SOCIAL SECURITY,        §
    DEFENDANT.                      §

### FINDINGS, CONCLUSIONS AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE
### AND
### NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of

Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation

of the United States Magistrate are as follows:

### FINDINGS AND CONCLUSIONS

### I.     STATEMENT OF THE CASE

Plaintiff John Lay ("Lay") filed this action pursuant to Sections 405(g) and 1383(c)(3) of

Title 42 of the United States Code for judicial review of a final decision of the Commissioner of

Social Security denying his claims for a period of disability and disability insurance benefits

("DIB") under Title II of the Social Security Act ("SSA"). Lay protectively applied for DIB on

September 8, 2010, alleging his disability began on September 13, 2010. (Transcript ("Tr.") 17,

138-43.) After his application for benefits was denied initially and on reconsideration, Lay

requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 17, 90-94, 101-105.) The

ALJ held a hearing on January 30, 2012, and she issued an unfavorable decision on April 24,

2012. (Tr. 14-32, 37-84.) On May 16, 2013, the Appeals Council denied Lay's request for

review, leaving the ALJ's decision as the final decision of the Commissioner of his case. (Tr. 7-12.)  Lay subsequently filed this civil action seeking review of the ALJ's decision.

## II.  STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq*., of the SSA.  In addition, numerous regulatory provisions govern disability insurance benefits.  *See* 20 C.F.R. Pt. 404.  The SSA defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial or gainful activity.  42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999).  To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed.  20 C.F.R. § 404.1520 (2009).  First, the claimant must not be presently working at any substantial gainful activity.  Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit.  20 C.F.R. § 404.1527.  Second, the claimant must have an impairment or combination of impairments that is severe.  20 C.F.R. § 404.1520(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985, *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000).  Third, disability will be found if the impairment or combination  of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt. P, App. 1.  20 C.F.R.  § 404.1520(d).  Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work.  *Id.* § 404.1520(e).  And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience.  *Id.* § 404.1520(f); *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir. 1999).  At steps one through four, the burden of proof rests upon the claimant to show he is disabled.

2

*Crowley*, 197 F.3d at 198.  If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments.  *Id.*

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole.  *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988).  Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion.  *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).  It is more than a mere scintilla of evidence, but less than a preponderance.  *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.[1]

### III.   ISSUES

In his brief, Lay presents the following issues:

A. Whether the ALJ followed the proper legal standard in evaluating the opinion of Lay's treating physicians regarding both his physical and mental condition; and

B. Whether the ALJ followed the proper legal standard in evaluating Lay's credibility.

(Plaintiff's Brief ("Pl.'s Br.") at 11-19.)

### IV.   ADMINISTRATIVE RECORD

In her April 24, 2012 decision, the ALJ found that Lay met the insured status requirements of the SSA through December 31, 2014 and had not engaged in any substantial gainful activity since September 13, 2010, the alleged onset date of disability.  (Tr. 19.)  At the

---

[1] There are four elements of proof that must be weighed in determining whether substantial evidence of disability exists:  (1) objective medical facts;  (2) diagnoses and opinions of treating and examining physicians;  (3) the claimant's subjective evidence of pain and disability; and  (4) the claimant's age, education, and work history. *See Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991).

3

second step of her analysis, the ALJ found that the medical evidence of record established that Lay had the severe impairments of "type II diabetes mellitus with peripheral neuropathy, hypertension, and schizoaffective disorder – bipolar type." (Tr. 19.)  At the third step, the ALJ found that Lay did not suffer from an impairment or combination of impairments that met or equaled the severity of the impairments in the listing. (Tr. 20–29.)  As to Lay's RFC, the ALJ stated:

> Based upon the medical evidence described above and the subjective complaints of the claimant, as supported by the record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) – lift/carry 10 pounds occasionally and less than 10 pounds frequently; stand/walk two hours during a normal eight-hour work day; sit six hours during a normal eight-hour workday; with a sit/stand option every hour approximately, but with no need to leave the work area; push/pull limited by the ability to lift/carry; no climbing, no kneeling, no crouching, no crawling, and other posturals occasionally; working with things rather than with people; no interaction with the public and interaction with coworkers to be casual only and incidental to work performed; and maintain attention and concentration for two-hour periods and pace over a 40-hour workweek while in the performance of simple job duties.

(Tr. 29 (internal citations omitted).)

Based on her RFC assessment, the ALJ opined that Lay was not able to perform any of his past relevant work. (Tr. 30.)  However, at the fifth step the ALJ found that there are jobs that exist in significant numbers in the national economy that Lay could perform. (Tr. 30.)  Based on this determination, the ALJ concluded that Lay was not disabled. (Tr. 30.)

## V.   DISCUSSION

### A. Treating Physicians' Opinions

In his brief, Lay argues that the ALJ erred in failing to assign proper weight to the opinions of Arunachalam Thiruvengadam, M.D. ("Dr. Thiruvengadam") and Sandra Moreno, M.D. ("Dr. Moreno"), his treating physicians. (Pl.'s Br. at 11-16.)  Specifically, Lay claims

that the ALJ failed to show good cause in rejecting the medical opinions of Lay's treating physicians. (Pl.'s Br. at 11-16.)   Lay alternatively contends, citing Social Security Ruling ("SSR") 96-2p, that even if the ALJ was not required to give controlling weight to the medical opinions of his treating physicians, such opinions are still entitled to deference and should have been weighed using all the factors provided in 20 C.F.R. § 404.1527.   (Pl.'s Br. at 14-16, *citing* SSR 96–2p, 1996 WL 374188, at *4 (S.S.A. July 2, 1996).)

Controlling weight is assigned to the opinions of a treating physician if such opinions are well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record.   20 C.F.R. § 404.1527(c)(2); *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995); *Bowman v. Heckler*, 706 F.2d 564, 568 (5th Cir. 1983).   While opinions on the ultimate issue of disability status are reserved to the ALJ, she must consider all medical opinions.   20 C.F.R. §§ 404.1527(b), (d)(1).   The ALJ may decrease the weight assigned to a treating physician's opinion for good cause, which includes disregarding statements that are brief and conclusory, unsupported by acceptable diagnostic techniques, or otherwise unsupported by the evidence.   *Leggett*, 67 F.3d at 566; *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994).   Conclusory statements to the effect that the claimant is disabled or unable to work are legal conclusions, not medical opinions, and are not entitled to any special significance.   *See* 20 C.F.R. § 404.1527(e); *see also Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003).

In *Newton v. Apfel*, the Fifth Circuit Court of Appeals held that "absent reliable medical evidence from a treating or examining specialist, an ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § [404.1527(c)]."   *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir.

2000).   Under the statutory analysis of 20 C.F.R. § 404.1527, the ALJ must evaluate the

following: (1) examining relationship; (2) treatment relationship, including the length, nature,

and extent of the treatment relationship, as well as frequency of the examination(s); (3)

supportability; (4) consistency; (5) specialization; and (6) other factors which "tend to

support or contradict the opinion." 20 C.F.R. § 402.1527(c); *see* SSR 96-6p, 1996 WL 364180,

at *3 (S.S.A. July 2, 1996); SSR 96–2p, 1996 WL 374188, at *4.

### 1.   Psychiatric Opinion – Dr. Thiruvengadam

Lay argues that the medical opinions of his treating psychiatrist, Dr. Thiruvengadam, are

entitled to controlling weight, as they are based on appropriate clinical and diagnostic

abnormalities and not contradicted by other substantial evidence in the record. (Pl.'s Br. at 12-

13.) In light of this assertion, Lay contends that the ALJ's reliance on the medical opinion of a

non-examining state agency medical consultant ("SAMC") is particularly misplaced in this case.[2]

(Pl.'s Br. at 14.) He further argues that supported opinions from a treating source that are not

contradicted by substantial evidence must be adopted, and opinions from non-examining sources

may outweigh a treating source only if the former has reviewed a complete case record that

includes a medical report from a specialist. (Pl. Br. at 13-14, *citing* SSR 96-2p at *4; SSR 96-6p

at *3.) Lay points out that the non-examining SAMC in this case did not review Lay's complete

medical records. (Pl.'s Br. at 14.)   According to Lay, this precluded the ALJ from giving the

SAMC's medical opinions controlling weight over Dr. Thiruvengadam's. (*See* Pl.'s Br. at 14.)

---

[2]In a Psychiatric Review Technique form dated May 27, 2011, SAMC Rena Popma, Psy.D. ("SAMC Popma"), found that the medical evidence of record to be unreliable, as well as the activities of daily living reports. (Tr. 610; *see* Tr. 598-611.) He opined that the GAF score of 40 given by the clinical examiner did not reflect the functioning in the totality of the medical evidence of record. (Tr. 610.) He found that Lay would be somewhat restricted by "sxs," but would not be wholly compromised in the ability to function in a work setting. (*Id.*)

In a "Psychiatric/Psychological Impairment Questionnaire" ("Questionnaire") dated November 30, 2011, Dr. Thiruvengadam diagnosed Lay with schizoaffective disorder, indicated that Lay's prognosis was very poor, and reported his lowest global assessment of functioning ("GAF")[3] score in the past year to be 30.[4]   (*See* Tr. 751.)  Dr. Thiruvengadam also opined that Lay suffered from "total and permanent disability," and indicated his diagnosis was based on the following clinical findings: (1) poor memory; (2) sleep disturbance; (3) mood disturbance; (4) delusions or hallucinations; (5) anhedonia; (6) psychomotor agitation or retardation; (7) difficulty thinking or concentrating; (8) suicidal ideation; social withdrawal or isolation; (9) blunt, flat or inappropriate affect; (10) decreased energy; and (11) manic syndrome.  (Tr. 752, 758.)  Dr. Thiruvengadam opined that Lay was experiencing depression, mania, and psychosis. (Tr. 752.)  He additionally reported that Lay was markedly limited in fifteen out of twenty work related categories, including his ability to: (1) understand or remember one or two step instructions; (2) sustain ordinary routine without supervision; (3) work in coordination and proximity to others without being distracted by them; (4) maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; and (5) travel to unfamiliar places or use public transportation. [5]  (Tr. 754-756.)

As to Dr. Thiruvengadam's treatment of Lay, the ALJ stated:

---

[3] A GAF score is a standard measurement of an individual's overall functioning level with respect to psychological, social, and occupational functioning.  American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 1994) (DSM-IV).

[4] A GAF score between 21 and 30 indicates behavior which is considerably influenced by delusions or hallucinations or serious impairment in communication or judgment.  DSM-IV at 34.

[5] The Court notes that Thiruvengadam also found Lay to be markedly limited in his ability to: (1) understand, remember, and carry out detailed instructions; (2) maintain attention and concentration for extended periods; (3) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerance; (4) complete a normal workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (5) interact with the general public; (6) accept instructions and respond appropriately to criticism from supervisors; (7) get along with co-workers or peers without distracting them or exhibiting behavioral extremes; (8) respond appropriately to changes in the work setting; and (9) set realistic goals or make plans independently. (Tr. 754-756.)

7

[Lay] underwent an initial evaluation by the staff psychiatrist (Dr. Arunachalam Thiruvengadam) in June 2011. He complained of depression and the mental status examination revealed [Lay] was calm, cooperative, with normal movement and speech, depressed, manic, sad, tearful affect, but clear and logical thoughts that were goal directed.  The claimant reported hallucinations wherein a voice was telling him to end his life. Cognitive evaluation revealed the claimant was oriented to person, place, date, and situation with fair recent and remote memory, fair concentration, below average intelligence, fair insight and judgment, and an assessment of schizoaffective disorder and a GAF of 35. The staff psychiatrist established a medical regime (Trazadone, Seroquel, and Wellbutrin) and his clinic notes reveal he educated the claimant regarding psychiatric illness, chemical dependence, medication usage, side effects, and following up.

In July 2011, the staff psychiatrist partially completed a one-page physician's statement on a Texas Health and Human Services Commission form where the claimant had applied for benefits. He cited a permanent mental impairment of schizoaffective disorder, but the doctor failed to cite activity restrictions, if any. By September 2011, the treating source stated that the claimant was improving, and was mildly depressed. His mental status examination revealed clear sensorium, normal affect, normal speech, normal thought content in logical and coherent thought processes and the claimant is going on an "outing" to help with depression and reporting it was very helpful. He then failed to keep his November 2011 appointment.

(Tr. 26 (internal citations omitted).)  After noting the results of the Questionnaire, specifically Thiruvengadam's opinion that Lay was markedly limited in his ability to sustain activity over a normal workday and workweek on an ongoing basis in a competitive work environment, the ALJ stated:

I find the evidence of record, including [Thiruvengadam's] own clinic notes, do [sic] not support such opinion, especially when he reported in September 2011 that the claimant was improving and mildly depressed, then going on an outing. Therefore, I find this subjective opinion is of little value as it is not supported by the objective record, and is not entitled to "controlling weight."

(Tr. 26 (internal citations omitted).)   In addition, the ALJ stated:

State Agency physicians reviewed this consultative examination and the medical evidence of record and the claimant's self-reported activities of daily living in March of 2011 wherein he reported hearing voices telling him to hurt himself, isolation, the inability to concentrate on anything, and no social activity. Then the record documents the claimant independently rode a bus to a consultative examination the following month; had adequate hygiene and

grooming, made good eye contact, and spoke with normal rate, rhythm, and tone. After he reported some symptoms and was only able to recall four out of six digits forward correctly, and did not know his Social Security number, he was able to perform serial threes, subtracting three from 100 to 91 correctly, and correctly calculated 5 + 49 and 10 + 717, and 3 x 515 with estimate of intelligence low average to average. Thus, they determined the medical evidence of record and activities of daily living were inconsistent and unreliable. Further, they reported that a GAF of 40 in a standalone consultative examination does not reflect functioning in totality of the medical objective evidence of record. They determined the record established the claimant shows adequate mental functioning in appropriateness, independence, sustainability, quality and effectiveness in domains of activities of daily living, socialization, and concentration, persistence and pace in the record. They determined the record establishes that although the claimant may be somewhat restricted by symptoms, he would not be wholly compromised in the ability to function in a work setting. Thus, they determined the evidence of record, including the medical evidence of record, partially supported the alleged functional limitations, and that the claimant retained the functional capacity to understand, remember, and carry out detailed but not complex instructions; make basic decisions; attend and concentrate for extended periods; interact with others; accept instructions; and respond to changes in a routine work settings [sic]. They stated the alleged severity of limitations due to the claimant's symptoms was not supported by the evidence of record. Although not required to do so, I generally endorse the determinations by the State agency physicians, and take administrative notice of the claimant reporting the main reason for being out of the labor force as "not able to find/keep job," not due to a medically determinable mental/physical impairment.

(Tr. 25-26 (internal citations omitted.))

With respect to Dr. Thiruvengadam's opinions, the ALJ took administrative notice of the inconsistency between the one-page physician's statement on the Texas Health and Human Services form, the previous examination of Lay in September, and the Questionnaire filled out by Thiruvengadam in November of 2011. (Tr. 26.) She also found that the physician's notes regarding Lay going on an outing contradicted Thiruvengadam's opinions, as did a consultative clinical interview with mental status examination in April of 2011 where Lay reported riding a city bus to the evaluation. (Tr. 25, 589, 610.) The ALJ additionally noted:

The claimant further testified as follows. Regarding anxiety and panic attacks – he was hearing voices; however, has been doing well while on medication and no longer hears them. He takes medication for depression, and is

stable as long as he takes his medication . . . . He shops for personal hygiene products twice a month. He goes out to eat once a month. He borrows his landlady's car to drive to see his grandchildren, and his son and daughter visit with him in person or by telephone. He attends church every Sunday; cuts the grass for his landlady using a push mower; washes dishes; makes his bed; mops the floor; and washes his clothes. He watches television five hours a day and is able to follow the story. He plays dominos and cards with friends and family. With Trazadone medication, he sleeps a total of six hours, and naps about three hours during the day. . . .

    . . . .

On other forms contained in the record the claimant reported that he gets along very well with authority figures and has never been fired or laid off from a job because of problems. In a similar form that he later completed four months later, however, he reported that he had been fired or laid off from a job because of problems getting along with other people.

(Tr. 20-21 (internal citations omitted).)[6] Additionally, Lay testified that he drove approximately twenty miles each week to see his caseworker. (Tr. 43-44.) The ALJ also noted that Lay originally reported his primary reason for being out of the labor force was because he is "not able to find/keep job," not due to a medically determinable mental or physical impairment. (Tr. 26; *see* Tr. 646, 655.)

Based on the foregoing, the Court concludes that the evidence cited by the ALJ is satisfactory and constitutes substantial evidence to support the ALJ's finding that Dr. Thiruvengadam's opinion is not supported by the objective record. However, due to the ALJ's decision to endorse the opinion of the non-examining state agency physicians, *Newton* dictates

---

[6] The ALJ went on to note that: (1) the record establishes Lay has a history of confusion and altered mental state as a result of uncontrolled diabetes mellitus and hypertension; (2) he has neuropathy; (3) Lay's last psychiatric hospitalization was in 1993; (4) he worked at the level to constitute substantial gainful work activity from 1997 to 2009; (5) in September of 2011, the record reflects the claimant improving with mild depression and normal thought content, then reporting the claimant being withdrawn and hearing voices; (6) clinic notes of October 2011 reflect no progress, not implementing coping skills, but clinic notes in November 2011 reflect Lay making progress; and (7) Lay reported being able to complete tasks without reminders. (Tr. 27-28.) She went on to state "I find that the evidence of record reflects issues of complaints, but overall, [Lay] being able to cope with work within the bounds of the following residual functional capacity." (*See id.* at 28.)

that she must perform a detailed analysis of Dr. Thiruvengadam's views under the criteria set

forth in 20 C.F.R. § 404.1527.  *See Newton*, 209 F.3d at 448, 453.

Contrary to Lay's argument, the ALJ analyzed the views of Dr. Thiruvengadam in a

manner consistent with the statutory provision.  To begin with, in her decision the ALJ, noting

her obligation regarding medical opinion evidence, stated :

> Therefore, I have considered all the medical evidence in this case, including opinion evidence, pursuant to 20 CFR § 404.1527 and SSRs 96-2p and 96-5p. In determining what weight to give to the various reports and opinions, I evaluated the medical records as a whole and considered such things as new evidence submitted after the last State Agency review; whether the opinion is based solely upon review of medical records or in conjunction with an actual examination of claimant; whether there is a treating-physician relationship with claimant and, if so, such factors as the length and nature of the relationship, the physician's specialized expertise, the frequency and purpose of the examinations, and the consistency of the opinion with the objective record, diagnostic tests, and the other opinion evidence.
>
> . . . .
>
> I find that neither the objective medical evidence nor any other non-medical evidence establishes that the claimant's ability to function is so severely impaired as to preclude the performance of all work activities.  No treating source has documented the presence of a medically determinable impairment that meets the level of severity of a Section contained within the Listing of Impairments. Whether an individual's impairment manifests the requirements is simply a matter of documentation.   SSR96-5p.    That documentation is absent. No treating physician has documented a medically determinable impairment that would prevent the claimant from engaging in substantial gainful work activity.

(Tr. 27, 30.)  As to factors one and two of the regulatory analysis, the ALJ cited an abundance of

Dr. Thiruvengadam's medical evidence of record, including the following: (1) an initial clinical

evaluation in June 2011; (2) a July 2011 physician's statement on a Texas Health and Human

Services form; (3) clinical notes from September 2011; (4) a missed appointment from

November 2011; and (4) an impairment questionnaire dated November of 2011.  (Tr. 26.)  All of

these documents contained  relevant information  regarding the examining relationship between

Lay and Dr. Thiruvengadam, as well as information regarding the length, nature, extent, and frequency of treatment. (*See* Tr. at 650-654, 751-758.)  As to factors three, four, and six, under which the ALJ evaluates the supportability and consistency of the physician's opinion, as well as any other factors which "tend to support or contradict the opinion," the ALJ pointed out the internal inconsistencies between Thiruvengadam's treatment records, and the other medical evidence of record. (Tr. 26; *see* 20 C.F.R. § 404.1527(c)(3)–(4), (6).)  In regards to factor five, under which the ALJ considers whether the physician is a specialist, she referred to Thiruvengadam as "the staff psychiatrist," and noted that Lay was being examined for mental impairments.   (Tr. 26.)   Being as the ALJ   properly considered the treatment records and opinions of Dr. Thiruvengadam, and went through the factors listed in  20 C.F.R. § 402.1527(c) before rejecting Thiruvengadam's opinions in the Questionnaire, the Court concludes that the ALJ did not err in endorsing the opinion of the State Agency physician over Dr. Thiruvengadam.

As stated above, Lay claims, citing SSR 96-6p,  that "[t]he opinions from a non-treating, non-examining consultant who reviewed a marginally developed record cannot supplant findings from a long-time treating specialist whose opinions are well supported." (Pl.'s Br. at 14.)  Lay further states that the "only medical evidence reviewed [by the SAMC] was from the one-time consultant Dr. Cole."  (*Id.*)  The relevant portion of SSR 96-6p states:

> In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources.  For example, the opinion of a State agency medical or psychological consultant or other program physician or psychologist may be entitled to greater weight than a treating source's medical opinion if the State agency medical or phychological [sic] consultant's opinion is based on a review of a complete case record that includes a medical report from a specialist in the individual's particular impairment which provides more detailed and comprehensive information than what was available to the individual's treating source.

SSR. 96-6p, 1996 WL 374180, at *3.

However, this portion of SSR 96-6p that Lay relies upon does not support his argument regarding the psychological consultants. Contrary to Lay's claim, review of a claimant's complete medical record by a State Agency medical or psychological consultant is not a prerequisite for finding that such medical opinions are entitled to controlling weight. *See Asberry v. Astrue*, No. 11-715-SDD-SCR, 2013 WL 3328977, at \*5 (M.D. La . July 1, 2013) (finding that "[c]ontrary to the plaintiff's argument, SSR 96-6p does not require that the state agency medical consultant must have reviewed every record and statement of the treating physician for the ALJ to give more weight to the consultant's opinion"). The review of a complete medical record is merely one "example" of when a consultative psychologist's opinion may be given greater weight than the opinion of a treating physician. See SSR 96-6p at \*3.

### 2. Treating Physician – Dr. Moreno

Lay also argues that the medical opinion of his treating physician, Dr. Moreno, was entitled to controlling weight. (Pl.'s Br. at 15-16.) Lay argues that Dr. Moreno's medical opinions were supported by objective medical evidence. In his brief, Lay claims:

> [The ALJ] made contradictory findings that the opinions from Dr. Moren[o] were not entitled to controlling weight because they were unsupported, but at the same time stated that Dr. Moren[o]'s opinions could *not* be rejected based on the "symptoms, signs, and laboratory findings." The later statement is more consistent with the record as Dr. Moren[o] stated that her opinions on Mr. Lay's functional limitations were based on clinical findings of severe bilateral foot bunions, pre-ulcerative calluses on both feet with decreased sensation, and evidence of abdominal hernia and diagnostic lab testing consistent with uncontrolled diabetes and a sonogram showed a hernia.

(Pl.'s Br. at 15 (citations omitted).) Lay further contends that the ALJ failed to identify good cause for rejecting the opinions of Dr. Moreno. (*See* Pl.'s Br. at 15.) Specifically, Lay claims that Moreno's opinions were supported by acceptable clinical and laboratory diagnostic techniques. (Pl.'s Br. at 15-16.) Moreover, Lay argues that the ALJ failed to identify substantial

evidence contradicting Moreno's opinions. (Pl.'s Br. at 16.) Lay alternatively contends that, at the very least, the ALJ was required to weigh the medical opinion of this treating source under the factors in 20 C.F.R. § 404.1527(c), but failed to do so. (Pl.'s Br. at 16.)

In December of 2011, Dr. Moreno completed a multiple impairment questionnaire based on her diagnoses of the following: (1) diabetes mellitus with diabetic neuropathy; (2) hypertension; (3) abdominal wall hernia; (4) bunions on both feet; (5) history of transient ischemic attack; (6) and schizophrenia. (Tr. 23, 740-47.) She cited her clinical findings of severe bilateral foot bunions, pre-ulcerative calluses on both feet with decreased sensation, and a sonogram showing an abdominal hernia as the evidence in support of her diagnoses. (Tr. 740.) She reported a fair prognosis with neuropathic foot pain, arthritic (mechanical) pain, and sharp pain over the abdominal region. (Tr. 740-741.) Moreno also stated that Lay's pain is constant and precipitated by activity. (Tr. 740-741.) She opined that Lay would be able to sit for six hours, and stand or walk for one hour in the course of an eight-hour work day. (Tr. 742.) Moreno further opined that Lay could lift up to five pounds frequently, five to ten pounds occasionally and never lift over ten pounds. (Tr. 743.) She recommended Lay perform no heavy lifting and that he avoid kneeling and heights. (Tr. 746.) Moreno also reported that Lay was capable of moderate stress, as well as using his fingers, hands, and arms. (Tr. 744.) Even though his diabetes is uncontrolled,[7] Moreno estimated he would only miss work about two to three times a month. (Tr. 746.)

Although the Court agrees that the ALJ could have explained the basis for her rejection of Moreno's medical opinions more clearly, the ALJ had previously cited evidence in the record that supports her decision to reject Dr. Moreno's opinions. (Tr. 20-23.)   The ALJ noted Dr.

---

[7] The Court notes that the ALJ incorrectly stated that Moreno found Lay's diabetes mellitus to be controlled. (Tr. 23.) This appears to be a typographical error as the ALJ previously noted elsewhere in her decision that "the record documents a medical history of uncontrolled type II diabetes mellitus." (Tr. 21.)

Moreno's claim that her opinions regarding Mr. Lay's functional limitations were based on the following findings: (1) severe bilateral foot bunions; (2) pre-ulcerative calluses of both feet; and (3) evidence of abdominal hernia. (Pl.'s Br. at 15; Tr. 23, 741.) However, evidence in the record from another examining physician indicates that Lay had a stable right foot despite having a large bunion deformity, and semi rigid hammertoes 2 through 5 on both feet. (Tr. 22; *see* Tr. 320.) The ALJ additionally noted that Lay went to the emergency room of John Peter Smith Hospital in April of 2011, where he was found to have: (1) normal gait and station; (2) the ability to move about the room unassisted; and (3) the ability to get onto and off of the exam table without difficulty. (Tr. 22; *see* Tr. 583.) A later hospitalization in November of the same year revealed that Lay had normal muscle tone and strength in lower extremities with bilaterally palpated and symmetrical pedal pulses. (Tr. 24, 763.) The examining physician additionally found no cyanosis, no clubbing, no tremor, or edema of the lower extremities. (Tr. 24, 763; *see* Tr. 583.) The ALJ noted that the record contained no objective signs of an incapacitating impairment, such as muscle atrophy or grossly abnormal neurological deficits. (Tr. 27, 763.) In his own testimony, Lay reported that he carries light groceries, drives a car to visit his grandchildren, attends church every Sunday, cuts the grass for his landlady using a push mower, mops the floor, and washes his clothes, and goes bowling. (Tr. 21, 60, 64-65.)

As to the hernia, the ALJ specifically found that it was a medically determinable impairment. (Tr. 26.) In her decision, the ALJ reviewed medical records that established Lay underwent surgery for recurrent ventral hernia, noting that Lay was expected to recover in less than twelve months. (Tr. 26.) Based on this recovery time, the ALJ concluded that Lay had failed to meet the durational requirement set forth under 20 C.F.R. 404.1509. (Tr. 26.) *See also*

42 U.S.C. § 423(d).[8]   Therefore, any arguments regarding Dr. Moreno's medical opinions on

Lay's hernia are moot, as it has no bearing on Lay's current functional limitations.

   In addition, contrary to Lay's claims, it appears that the ALJ actually adopted most of the

medical opinions of Dr. Moreno as her ruling on Lay's RFC is consistent with the majority of

Dr. Moreno's opinions regarding Lay's functional limitations. (*See* Tr. 29, 740-746.)   As stated

above, in her final determination of Lay's RFC, the ALJ found that Lay could perform sedentary

work as defined by 20 C.F.R. § 404.1567(a) with some additional limitations. (Tr. 29.)   She

concluded, inter alia, that Lay could lift/carry ten pounds occasionally and less than ten pounds

frequently and sit six hours and stand/walk two hours during a normal eight-hour workday with a

sit/stand option approximately every hour. (Tr. 29.)   The ALJ additionally found that Lay 1)

should not kneel, climb, crouch, or crawl; 2) should work with things rather than people; and 3)

have only casual interaction with coworkers incidental to the work he performs. (Tr. 29.)   Many

of these RFC determinations are identical to the functional determinations made by Moreno in

the Questionnaire. (*See* Tr. 29, 740-746.)   The only above-listed determinations that are directly

in conflict with Moreno's opinions are a one-hour discrepancy in the number of hours Lay can

walk or stand, and a five-pound difference in the amount of weight Lay can lift frequently. (*See*

Tr. 29, 740-746.)   As the Court previously noted, there is evidence in the record, especially in

Lay's own testimony, that tends to contradict Moreno's opinions on these two limitations.

   Based on the foregoing, the Court finds that the ALJ cited substantial evidence in the

record establishing good cause for her rejection of Dr. Moreno's opinions regarding Lay's

functional limitations. Lay, however, further argues that the ALJ failed to analyze Dr. Moreno's

opinions under the factors in 20 C.F.R. § 404.1527(c). (Pl.'s Br. at 16.)   Assuming, without

---

[8] As previously noted, 42 U.S.C . § 423(d) dictates that an impairment must be expected to continue for at least 12 months in order to satisfy the definition of disability.

deciding, that the ALJ was required to analyze Dr. Moreno's opinions using these factors, the Court finds that the ALJ did so.[9] As to factors one and two of the regulatory analysis, the ALJ noted that Dr. Moreno was Lay's treating source at John Peter Smith Hospital, and that she reported seeing Lay every 4-6 weeks from July to December of 2011. (Tr. 23; *see* Tr. 740.) The ALJ reviewed the Questionnaire filled out by Dr. Moreno, which contained information regarding the type of treatment provided, as well as the extent of the examinations and testing she performed on Lay. (Tr. 23, 740-747.) As to factors three, four, and six, under which the ALJ evaluates the supportability and consistency of the physician's opinion, as well as any other factors which "tend to support or contradict the opinion," the ALJ pointed out the internal inconsistencies in Dr. Moreno's treatment records with the other medical evidence of record. (Tr. 20-24.) The ALJ additionally cited other nonmedical evidence that contradicted Dr. Moreno's opinions. (Tr. 21, 60-68.) In regards to factor five, under which the ALJ considers whether the physician is a specialist, she cited the Questionnaire, which lists Dr. Moreno's specialty as family medicine. (Tr. at 23, 747.) Being as the ALJ properly considered the treatment records and opinions of Dr. Moreno to be consistent with the factors listed in 20 C.F.R. § 404.1527(c), and substantial evidence supports the ALJ's decision, the Court concludes that the ALJ did not err in declining to give controlling weight to Dr. Moreno's opinions in the Questionnaire.

---

[9] Pursuant to *Newton*, the ALJ is required to perform a detailed analysis of the treating physician's views under the factors set forth in 20 C.F.R. § 404.1527(c) only if there is no reliable medical evidence from another treating or examining physician that controverts the treating specialist. *Newton*, 209 F.3d at 455-57. An ALJ does not have to perform a detailed analysis under the factors in the regulation "where there is competing first-hand medical evidence and the ALJ finds as a factual matter that one of the doctor's opinion is more well-founded than another" as well as in cases in which "the ALJ weighs the treating physician's opinion on disability against the medical opinion of other physicians who have treated or examined the claimant and have specific medical bases for a contrary opinion." *Id.* at 458; *see Alejandro v. Barnhart*, 291 F. Supp. 2d 497, 507-11 (S.D. Tex. 2003); *Contreras v. Massanari*, No. 1:00-CV-242-C, 2001 WL 520815, at *4 (N.D. Tex. May 14, 2001) ("The Court's decision in Newton is limited to circumstances where the administrative law judge summarily rejects the opinions of claimant's treating physician, based only on the testimony of a non-specialty medical expert who had not examined the claimant.").

B. **Credibility**

Lay also argues that the ALJ erred in failing to properly evaluate Lay's credibility. (*See* Pl.'s Br. at 17.)  First, Lay contends that the ALJ's reliance on Lay's non-compliance with treatment was misplaced, as the ALJ failed to: (1) cite any evidence to support her findings and (2) make the appropriate determinations under SSR 82-59. (*See* Pl.'s Br. at 18; *see also* SSR 82-59, 1982 WL 331384, at *1-2 (S.S.A. 1982).  Second, Lay argues that Dr. Moreno's objective medical findings contradict the ALJ's conclusion that there was no evidence of disabling physical signs or symptoms. (*See* Pl.'s Br. at 18.)  Third, Lay argues that the ALJ's reliance on her observations of Lay at his hearing was misplaced.  (*See* Pl.'s Br. at 19.)  In this way, Lay asserts that his "behavior at a non-adversarial proceeding held on a single day cannot be equivalent with his capacity to mentally withstand full-time work in a competitive environment 8 hours a day, 40 hours a week." (Pl.'s Br. at 19.)  Finally, Lay argues that the ALJ erred in failing to compare his testimony regarding his symptoms, limitations, activities, and lack of response to treatment to the objective record, as required by SSR 96-7p. (Pl. Br. at 19.)

In evaluating a claimant's subjective complaints, the ALJ first considers whether there is a medically determinable impairment that could reasonably be expected to produce the claimant's pain or other symptoms. 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186, at *2 (S.S.A. July 2, 1996).  Once the impairment is found, the ALJ evaluates the intensity, persistence and limiting effects of the symptoms on the claimant's ability to do basic work activities.  20 C.F.R. § 404.1529(c); SSR 96-7p, 1996 WL 374186, at *1 (S.S.A. July 2, 1996).  A claimant's statements about pain and other symptoms are not conclusive evidence of disability, but must be accompanied by medical signs and findings of a medical impairment that could reasonably be expected to produce the pain or other symptoms alleged, and that would lead to the conclusion

that an individual is disabled.   42 U.S.C. § 423(d)(5)(A).   A claimant's testimony must be consistent with the objective medical evidence and other available evidence.   20 C.F.R. § 404.1529.

In all cases in which pain or other symptoms are alleged, the administrative decision must contain a thorough discussion and analysis of the objective medical and other evidence, including the individual's complaints of pain or other symptoms and the adjudicator's own observations.   SSR 95-5p, 1995 WL 670415, at *2 (S.S.A. Oct. 31, 1995).   When assessing the credibility of an individual's statements, the ALJ considers, in addition to the objective medical evidence, the following: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, which the claimant receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the claimant uses or has used to relieve pain or other symptoms; and  (7)  any other factors concerning the claimant's functional capacity, limitations and restrictions due to pain or other symptoms.   20 C.F.R. § 404.1529(c); SSR 96-7p at *3.   An ALJ's unfavorable credibility evaluation will not be upheld on judicial review where the uncontroverted medical evidence shows a basis for the claimant's complaints unless the ALJ weighs the objective medical evidence and articulates reasons for discrediting the claimant's subjective complaints.   *Abshire v. Bowen*, 848 F.2d 638, 642 (5th Cir. 1988); *see Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994).

In evaluating Lay's credibility, the ALJ stated:

> I am persuaded that the claimant's failure to follow his treating sources' advice has (1) contributed to his diminished functioning; and (2) impugned his credibility as it

19

relates to his subjective complaints: he would not continue to nullify the treatment regimen if as limited as alleged. Therefore, I will consider subjective complaints credible only to the extent that they are supported by the evidence of record as summarized within this Decision.

The record indicates no end organ damage from diabetes mellitus or hypertension. He has a normal muscle tone and strength to upper and lower extremities. The record contains no objective signs of an incapacitating impairment, such as muscle atrophy or grossly abnormal neurological deficits.

. . . .

In considering the claimant's symptoms, I must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)—i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques—that could reasonably be expected to produce the plaintiff's pain or other symptoms.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, I must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, I must make a finding on the credibility of the statements based on a consideration of the entire case record.

In order for pain itself to be disabling, it must be constant, unremitting, and wholly unresponsive to therapeutic treatment. Subjective complaints of pain must be reasonably consistent with the objective record in order to be found credible. I am authorized to make credibility decisions with regard to the subjective complaints of pain, and I have considered the effect of pain and side effects to medication, if any, deciding his functional capacity.

I find that neither the objective medical evidence nor any other non-medical evidence establishes that the claimant's ability to function is so severely impaired as to preclude the performance of all work activities. . . .   No treating physician has documented a medically determinable impairment that would prevent the claimant from engaging in substantial gainful working activity.

(Tr. 27, 29, 30. (internal citations omitted).)   The ALJ went on to note that Lay had a history of

confusion and altered mental state as a result of uncontrolled diabetes mellitus and hypertension

and that he suffered from neuropathy. (Tr. 27-28.) She also stated that Lay had been diagnosed

with depression, bipolar disorder, schizoaffective disorder, and had reported hearing voices. (Tr. 28.) The ALJ had previously taken administrative notice of Lay's denial of suicidal ideation, delusional beliefs, and auditory hallucinations. (Tr. 24, 59.) She reviewed physical therapy evaluations for Lay's alleged stroke-like symptoms noting that the physical therapists questioned whether Lay actually had a stroke based on his symptoms and suggested Lay might be a malingerer. (Tr. 23, Tr. 682.) She noted that Lay reported having "diabetes in his eyes," further stating that "my vision is poor and what I can see is blurry." (Tr. 19, *see* Tr. 59.) She subsequently cited a consultative examiner who reported that Lay's visual acuity was 20/25 in each eye, uncorrected. (Tr. 19, 585.) Although the ALJ discussed the consultative examiner's report that Lay had balancing issues and was using a self-prescribed cane, she went on to point out that Lay rode a bus to that very same consultative examination and was able to get on and off the examination table without difficulty. (Tr. 28, 581, 583, 589.) The ALJ also noted that the consultative examiner also reported Lay being able to move around the room without assistance or difficulty. (Tr. 583.)

As to Lay's first argument that the ALJ erred in failing to: (1) identify any evidence of his non-compliance with treatment and (2) to make the appropriate determinations under SSR 82-59 (Pl.'s Br. at 18), the Court notes that SSR 82-59 instructs that a claimant with a disabling impairment must follow prescribed treatment if such treatment could be expected to restore his ability to work. SSR 82-59, 1982 WL 31384, at *1 (S.S.A. 1982). SSR 82-59 specifically directs that a claimant who fails without justifiable causes to follow prescribed treatment will be denied benefits, but such a claimant must be advised of the consequences of failing to follow prescribed treatment before benefits are denied. *Id*. at *1, *5.") In this case, however, the ALJ determined that Lay did not suffer from a *disabling* impairment and was not disabled; therefore

SSR 82-59 is inapplicable to this case.  *See Shipp v. Astrue* , No. 5:12-CV-005-BG, 2012 WL 6708550, at *5 (N.D. Tex. Aug. 30, 2012) (finding that claimant's argument that the ALJ must follow SSR 82-59 without merit because ALJ determined claimant did not have disabling impairment.)

In regards to identifying evidence in support of Lay's alleged non-compliance with treatment, the ALJ cited notes from a treating source that reported Lay was not implementing the coping skills prescribed by his psychiatrist.  (Tr. 28, 704.)  Additional medical records from a hospitalization in November of 2011 found that his symptoms were likely secondary to non-compliance with prescribed medication.  (Tr. at 24, 763.)  The ALJ noted that a consultative examination in April 2011 reported that his prognosis was dependent on his response to new medications.  (Tr. 28; *see* Tr. 592.)  The ALJ then cited Lay's testimony wherein he reported his depression was stable and that he no longer heard voices as long as he remained on his prescribed medications.  (Tr. 20, 54-55.)  Despite these admissions, Lay later responded to questioning by his attorney that he remained withdrawn and cried even while on his medications, which he reported made him feel drowsy and drunk.  (Tr. 27, 77-78.)  The ALJ also found that Lay would not have declined to follow his advised treatment if his symptoms were as severe as he claimed and determined this further impugned his credibility as it related to the severity of his symptoms.  (*See* Tr. 27.)  Based on the evidence cited above, the Court finds that the ALJ cited substantial evidence in the record of Lay's non-compliance with treatment and did not err in her conclusion that this disaffirmed his credibility.

Lay next argues that Dr. Moreno provided objective medical evidence of disabling physical signs and symptoms which supported Lay's statements regarding the effects of his impairments on his ability to perform substantial gainful activity.  (*See* Pl.'s Br at 18.)  This

argument is inapposite as the Court has already determined that the ALJ correctly found that Dr. Moreno's opinions were not entitled to controlling weight and the ALJ was free to reject them. As set forth above, the Court has already cited evidence in the record that contradicts Dr. Moreno's opinions, and it is irrelevant whether these opinions supported Lay's statements. Moreover, much of the evidence contradicting Dr. Moreno's opinions is the same evidence that contradicts Lay's statements. Thus, the Court concludes that the ALJ was correct in finding that the record contains no objective signs of an incapacitating impairment.

As to Lay's assertion that an ALJ may not consider her own personal observations of the claimant at an administrative hearing in determining a claimant's credibility, the Court finds that such argument is also without merit. The ALJ in this case found that Lay did not appear to be seriously mentally impaired at the hearing and exhibited no signs of drowsiness. (Tr. 27.) SSR 95-5p states that the ALJ's own observations are relevant to the determination of a claimant's credibility. *See* SSR 95-5p at *2; *see also Williams v. Astrue*, No. 11-583, 2011 WL 7025920, at *11 (E.D. La. Dec. 9, 2011) (finding that ALJ is in the best position to make credibility assessments, and further citing ALJ's observations of plaintiff's demeanor and behavior at the hearing before the ALJ in support of conclusion that substantial evidence supported ALJ's RFC assessment.)[10]   Therefore, contrary to Lay's objections, the ALJ was free to consider her personal observations as one factor in evaluating Lay's credibility.

_____

[10] The Court notes that Lay cited *Lovelace v. Bowen*, 813 F.2d 55, 60 (5th Cir. 1987), in support of his argument that the ALJ's observations are essentially irrelevant in a determination of the severity of a claimant's pain. (*See* Pl.'s Br. at 18-19.) In contrast to that decision, here the ALJ considered her observations as they related to his mental impairments, especially as they related to his ability to interact with others. (*See* Tr. 27.) Furthermore, the Court notes that more recent cases have found that the ALJ may consider demeanor at the hearing as one of several factors in evaluating a claimant's credibility. *See Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990) ("While exclusive reliance upon demeanor in credibility determinations is inappropriate, *see Lovelace*, 813 F.2d at 59-60, it is not reversible error for an ALJ to consider demeanor as one of several factors in evaluating a claimant's credibility.")

Lay's final argument is that the ALJ failed to compare Lay's testimony regarding his symptoms and limitations, limited activities of daily living, and lack of a significant response to treatment to the underlying record as required by SSR 96-7p. (Pl.'s Br. at 19; *see* SSR 96-7p at *3.) The Court notes that a claimant's daily living activities are also relevant in evaluating the credibility of subjective statements regarding pain and other symptoms. *See Reyes v. Sullivan*, 915 F.2d 151, 155 (5th Cir. 1990) (finding that inconsistencies between claimant's testimony about his limitations and his daily activities "were quite relevant in evaluating his credibility"); *see also* 20 C.F.R. § 404.1529(c); SSR 96-7p at *3. A claimant's testimony, however, must be consistent with the objective medical evidence and other available evidence. 20 C.F.R. § 404.1529.

Lay stated in a "Function Report-Adult" that he, *inter alia*, spends all day in his room staring at the wall, is unable to perform household chores or prepare meals for himself, and did not watch television or pursue any hobbies. (Tr. 191-204.) However, at his hearing before the ALJ, Lay testified that his activities of daily living consisted of the following: (1) driving to see his grandchildren; (2) shopping for personal hygiene items twice a month; (3) visiting with his children in person or by telephone; (4) attending church every Sunday; (5) cutting the grass for his landlady using a push mower; (6) washing dishes; (7) making his bed; (8) mopping the floor; (9) watching television five hours a day with the ability to follow the story line; (10) playing dominos and cards with friends and family; and (11) bowling. (Tr. 20-21, 60-68.) Despite Lay's arguments to the contrary, his testimony regarding his activities of daily living conflicts with his subjective reports of the nature and severity of his pain, as well as the severity of his mental and physical symptoms.

As previously noted, the ALJ stated in her decision that she "consider[ed] subjective complaints credible only to the extent that they are supported by the evidence of record as summarized within the text of this Decision." (Tr. 27.)  She additionally cited Lay's testimony on his activities of daily living, symptoms and limitations throughout her decision.  (Tr. 20-21, 24.)  As to a "lack of significant response to treatment," the ALJ also noted that Lay initially testified he was stable on his medications, but later made contradictory responses to his attorney.  (Pl.'s Br. at 19; Tr. 27; *see* Tr. 55, 77-78.)[11]  Lay did, in fact, testify at his hearing that "as long as I'm on my medication I'm all right." (Tr. 55.)

Moreover, the ALJ did properly consider the factors set forth in 20 CFR 404.1529(c) and SSR 96-7p in assessing Lay's credibility.  The ALJ set forth the factors (Tr. 27) and (1) considered Lay's activities of daily living (Tr. 20-21), (2) noted various medications that Lay was taking as well as their effectiveness (Tr. 20, 22, 26), (3) reviewed Lay's complaints of his symptoms, their progression, and factors that precipitate and aggravate his symptoms (Tr. 22), (4) reviewed treatment, such as surgery, Lay had undergone to treat his pain and other symptoms (Tr. 26); (5) noted that a consultative examiner reported Lay was using a cane (Tr. 28); and (6) reviewed Lay's functional limitations, as set forth above.  Thus, based upon a review of all the evidence in the record, Court concludes that the ALJ adequately compared Lay's testimony to the underlying record as required by SSR 96-7p.

In summarizing her findings regarding Lay's credibility, the ALJ found that "the evidence of record reflects issues of complaints, but overall, the claimant being able to cope with work within the bounds of [a sedentary] capacity." (Tr. 28.)  The Court finds that the ALJ's decision contains an adequate discussion and analysis of the objective medical and other

---

[11] Although most of the yes or no answers Lay gave to his attorney regarding his response to treatment were in direct conflict with the previous answers he gave to the ALJ, he did testify that daily negative incidents he had with his family have ceased since he began taking his medication. (*See* Tr. 78.)

evidence, including the individual's complaints of pain or other symptoms and the adjudicator's own observations.  For the foregoing reasons, the Court concludes that the ALJ did not err in her credibility determination.

## RECOMMENDATION

It is recommended that the Commissioner's decision be affirmed.

### NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within fourteen (14) days after the party has been served with a copy of this document.  The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made.  See 28 U.S.C. § 636(b)(1).  Failure to file, by the date stated above, a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge.  *See Douglass v. United Servs. Auto Ass'n,* 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **August 1, 2014**, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation.  It is further **ORDERED** that if objections are filed

and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously transferred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is **TRANSFERRED** to the docket of the United States District Judge.

SIGNED July 18, 2014.

_____
JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE